ELIZABETH E. UNDERWOOD, *et al.,* Executrix *vs.* OLD COLONY STREET RAILWAY COMPANY.

JULY 15, 1911.

PRESENT:  Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

*(1)  Street Railway.  Right of Way.  Duty to Look and Listen.*

The rule as to the right of way of a driver in crossing a railroad track is stated in *Beerman* v. *Union R. R. Co.,* 24 R. I. 275, to be, that one would have the right of way, if, proceeding at a rate of speed which under the circumstances of the time and locality was reasonable, he reached the point of crossing in time to safely go upon the track in advance of the approaching car, the latter being sufficiently distant to be checked and if need be stopped before it should reach him.  This case also states as the duty of a driver about to cross a street railway track that he shall look both ways immediately before crossing the track.  These two rules are not, however, connected, and if the circumstances are such that one may cross without negligence if he looks, crossing does not become a negligent act, constituting contributory negligence, because he fails to look before he starts.

The rule stated in *Price* v. *Rhode Island Co.,* 28 R. I. 220, that "the obligation to look and listen when approaching a track upon which cars are run, is so well established as the duty of a prudent person that a neglect of it must be held to be negligence in law," was not intended to declare that a lack of prudence shall be charged against a plaintiff if it does not at all contribute to the injury.

*(2)  Same.*

Where there was testimony which would warrant a jury in finding that in accordance with the rule stated in the case of *Beerman* v. *Union R. R. Co.,* deceased might have prudently gone upon the track, the fact that he did not look before he started to cross would not take away the right. For while, where a driver has the right of way he is still required to exercise reasonable care, his right of way is not dependent upon the fact that he looked up and down the track immediately before going upon it.

*(3) Private Driveway.*

The fact that deceased was crossing at a private driveway, did not affect his rights or the application of the rule.

*(4) Last Clear Chance. Negligence.*

Although a person is guilty of negligence in driving upon a track, and while on the track is still careless in failing to look towards an approaching car, if the motorman knows that unless measures are taken to check the speed of the car, injury will follow, it is his duty to take such measures as he reasonably can to check the speed of the car and avert the accident, and failure so to do, would be the proximate and efficient cause of the accident, and the failure of such person to look, continuing up to the time of the impact of the car, does not relieve the defendant from liability if its motorman neglected to make reasonable efforts to stop the car when he saw the dangerous situation.

*(5) Negligence. Signals. Proximate Cause.*

Request to charge that "whether the gong on the car was rung previous to the moment when the deceased drove upon the track is immaterial, as it was as much his duty to look and listen for an approaching car at that moment as it was the duty of the motorman to give warning," held properly refused, as whether warning was given was a material matter bearing upon the question of the care or negligence of the motorman, and might become *the* determining factor in the case.

*(6) Negligence. Wanton Recklessness.*

Although a person is lacking in vigilance and care, after getting upon a track, yet if the motorman does not exercise reasonable care after he knows of the peril of such person in attempting to cross the track and such care would have averted the accident, plaintiff can recover, even though the action of the motorman does not amount to wanton recklessness.

*(7) Damages. Death by Wrongful Act.*

In an action under the statute for recovery of damages for death by wrongful act, there can be no recovery for loss of future income of invested capital when such income is disconnected with the exertions of the deceased, nor for any income from invested capital beyond such portion of said income which can be found to be the result of such exertions.

*(8) Same.*

In an action for recovery of damages for death by wrongful act, charge of the court as to the measure of damages approved as a correct statement of the law in that respect.

BLODGETT, J., dissents.

TRESPASS ON THE CASE for negligence. Heard on exceptions of defendant and overruled.

SWEETLAND, J. This is an action of trespass on the case for negligence brought by the executrix of the will of William

Bailey, late of the town of Middletown, deceased, against the Old Colony Street Railway Company, to recover damages for the death of the testator, which they allege to have been caused by the negligence of the defendant without negligence on his part contributing thereto.

The case was tried in the Superior Court before Mr. Justice Brown and a jury, and resulted in a verdict for the plaintiff for $5,000. The case is before us upon exceptions to certain rulings of said justice upon the admission and exclusion of testimony; to certain portions of the charge of the justice; to the refusal of the justice to give certain instructions to the jury as requested by the defendant, and to the decision of the justice denying the defendant's motion for a new trial.

It is admitted that the buggy of Mr. Bailey, driven by him, was run into by one of the defendant's cars, as he was crossing its track, upon the highway, at the location of a driveway into the grounds of the residence of Mr. Bailey in said town of Middletown. At this point the highway runs about north and south. The residence of Mr. Bailey was to the east of the highway. The track of the defendant is on the extreme easterly side of the highway; parallel and a few feet to the west of the defendant's track is that of another street railway company. The part of the highway usually travelled by wagons and horses lies to the west of both tracks. Four hundred and eighteen feet north of said driveway is the southerly end of a curve in the defendant's track. This curve is three hundred and fifty-five feet long. Before Mr. Bailey turned to go into the driveway he was proceeding south upon the part of the highway to the west of both street railway tracks. The car which struck the buggy was also going south. When Mr. Bailey first indicated that he was going to cross the defendant's track, by turning to cross diagonally the track of the other railway company, the distance of the car from the buggy was estimated by different witnesses to the accident at various figures, from five hundred feet, as testified to by one of the

plaintiff's witnesses, to about sixty or seventy-five feet, as testified to by the conductor and motorman of the car. It however appeared that at a former trial of the case, held about nine months after the accident, the motorman had testified positively that he saw the buggy at the driveway when the car was about four hundred feet away. When the car came out of the curve and before the motorman tried to check the speed of the car it was going at the rate of fifteen or twenty miles an hour. The air brake upon the car was out of order and could not be used, which fact was known to the motorman. It took longer to stop the car with the hand than with the air brake. The left hind wheel of the buggy was struck by the overhang of the car just as said wheel had gone over the east rail of the defendant's track. The buggy was carried by the car about seventy feet south of the driveway before the car was stopped. Mr. Bailey was thrown from the buggy and injured. From the effects of these injuries he died fifteen days later. He was eighty-five years old at the time of his death. The top of said buggy was up and the sides were closed. It is apparent from the testimony that Mr. Bailey did not look in the direction of the approaching car before he drove upon the track; that he did not look up the track while he was crossing it, that he did not urge forward his horse while on the track; and that he apparently was ignorant of the approach of the car.

We find no merit in the exceptions of the defendant taken to the rulings of the justice admitting and excluding testimony.

The following instruction was given to the jury and excepted to by the defendant: "The deceased would have the right of way, if, proceeding at a rate of speed, which under the circumstances of the time and locality was reasonable, he reached the point of crossing in time to safely go upon the track in advance of the approaching car, the latter being sufficiently distant to be checked and, if need be, stopped before it should reach him."

There is no merit in this exception. The instruction is a

correct statement of the rule in this state as to the right of
way of a driver who desires to cross the track of a street
railway.  It is unconnected with the rule that before a
driver attempts to cross an electric car track he shall look
and listen for an approaching car.  Ordinary care for one's
safety dictates that before entering upon a place of danger a
person shall exercise his senses.  But if the circumstances
are such that one may cross without negligence if he looks,
crossing does not become a negligent act, constituting con-
tributory negligence, because he fails to look before he starts.

The case of *Beerman* v. *Union R. R. Co.*, 24 R. I. 275,
where the rule of the right of way, embodied in the instruc-
tion of Mr. Justice Brown to the jury, is enunciated, also
states as the duty of a driver about to cross a street railway
track that he shall look both ways immediately before
crossing the track.  In the facts of that case it clearly
appeared that the plaintiff did not have the right of way
and should not have attempted to cross; that if he had looked
both ways he would have seen his danger and that his
negligence in failing to look was the proximate cause of
his injury.  We do not consider the effect of the *Beerman*
case to be that the right of way which a driver may have
under the first rule is taken away because he has failed to
look and see that he has it.  The case of *Price* v. *Rhode
Island Co.*, 28 R. I. 220, holds that: "The obligation to
look and listen when approaching a track upon which cars
are run is so well established as the duty of a prudent person
that a neglect of it must be held to be negligence in law."
By this statement it was not intended to declare that a lack
of prudence shall be charged against a plaintiff if it does not
at all contribute to the injury complained of.  If one is
held to have seen an obvious danger whether in fact he has
seen it or not, in like manner one's action should be held
to be without negligence when in the circumstances it is
justified, although those circumstances were not investigated
with the care that prudent men ordinarily employ.  If
one has the right of way, in the absence of some special cir-

cumstance which would indicate to a prudent man that he should not exercise it, he may do so without negligence.

(2)    In the case at bar there was testimony before the jury which would warrant them in finding that in accordance with the rule stated in the *Beerman* case and in the instructions of Mr. Justice Brown, the deceased might prudently go upon the track for the purpose of crossing to his driveway. The fact that he did not look before he started to cross would not take away the right.    We do not intend by this that if the driver has the right of way he is not required to exercise reasonable care for his own safety while in the act of crossing, but that his right of way is not dependent upon the fact that the driver looked up and down the track immediately before going upon it.

(3)    The defendant contends that the rule contained in the instruction of the justice has no application to the situation in this case, as the deceased was crossing to a private driveway and not at an intersecting street or road.    Such distinction cannot properly be drawn.    The motorman was bound to know of the existence of this driveway from the part of the highway usually travelled across the defendant's track up to Mr. Bailey's premises.    There was the same right in Mr. Bailey to cross as at an intersecting street or road, and the same rule as to precedence between Mr. Bailey and the car is applicable to this situation.

(4)    The defendant excepted to the following instruction of the justice to the jury:    "But if he failed to look and listen for an approaching car and did drive upon the track and the approaching car was at such a distance from him when he drove upon the track and the motorman at that time observed and knew that the man was driving upon the crossing oblivious of the fact that the car was approaching and that unless he checked the speed of his car the deceased would be injured, it was his duty after he discovered that the deceased was in a perilous position and would be injured unless he took some measures to check the speed of the car, to take those measures if he could reasonably do so and avert the

accident, and if he failed to do that, in that case the negligence of the motorman in failing to prevent the accident after he observed the peril in which the deceased was placed, would become the proximate cause of the injury and his previous negligence, which he was guilty of before that time, would not be a contributing cause, and in that event the plaintiffs would not be precluded from recovering by reason of such previous negligence."

The justice had already instructed the jury very favorably for the defendant as to the duty of the deceased to look and listen before driving upon the track. This instruction, to which exception is taken, deals with the situation of the person going upon a street railway track without a right of way, or who may not prudently avail himself of his right of way or who negligently, for any other reason, goes upon the track. The defendant claims that this instruction was misleading; that it was not a correct statement of the doctrine of the "last clear chance;" that it did not clearly impress upon the minds of the jury that that doctrine has no application unless after the last moment, when the exercise of due care on the plaintiff's part would have prevented the accident, there was still a clearly defined interval of time during which the exercise of ordinary, reasonable care on the defendant's part would have prevented it, and during which the defendant was negligent. If the defendant means by this exception, that in case the deceased was guilty of negligence in driving upon its track and while on the track was still careless in failing to look towards the approaching car, although the motorman saw him in his place of danger and saw that the deceased was ignorant of that danger and was taking no steps on his part to avoid it, and the motorman also knew that unless some measures were taken to check the speed of the car the deceased would be injured, yet it was not the motorman's duty to check the speed of the car because the deceased was still careless, we say that such is not the law of this state. In such circumstances the rule stated in the instruction of

the justice to the jury is correct; it would be the motorman's duty to take such measures as he reasonably could to check the speed of the car and to avert the accident.    If he failed in that duty, such failure would become the proximate and efficient cause of the injury and the defendant would be liable.    The defendant contends that if the neglect of the deceased to look towards the approaching car continued up to the time of the accident then the plaintiff cannot recover because to permit recovery the last clear chance of the defendant's motorman to avert the accident must be subsequent to the time that the negligence of the deceased ceased to operate.    In some cases perhaps that contention may be warranted, as was stated by the court in *Brugge-man* v. *Illinois Central R. R. Co.*, 123 N. W. 1007, but in the circumstances of this case the failure of the deceased to look, continuing up to the time of the impact of the car with his buggy, does not relieve the defendant from liability if its motorman neglected to make reasonable efforts to stop the car when he saw the dangerous situation of the deceased.

The defendant excepted to the refusal of the justice presiding to instruct the jury in accordance with several requests made by it.    There was no error in the refusal of the justice as to the instructions, numbered 4, 5, 6 and 8. Each of these requested instructions assumes that the testimony clearly shows the deceased to have been guilty of negligence in driving upon the defendant's track.

(5)    The seventh request to charge refused by the justice is as follows:    "You are instructed that whether the gong on the defendant's car was rung previous to the moment when the deceased drove upon its track is immaterial in this case, as it was as much his duty to look and listen for an approaching car at that moment as it was the duty of the defendant's motorman to give him warning of its approach." This requested instruction was properly refused.    Whether or not the motorman gave warning that a car was approaching was a material matter, bearing upon the question of the motorman's care or negligence.    It might become the

determining factor in the case in certain possible findings upon the facts.   If the deceased was approaching the track and about to go upon it at a time when the car was so close to the horse and buggy of the deceased that the motorman by the exercise of ordinary, reasonable care could not stop the car before it reached and struck the said horse or buggy and it was doubtful whether the deceased knew that the car was approaching, it would be negligence on the motorman's part to not give warning of its approach.   If the jury should find that by such warning the deceased would have been notified of the danger of going upon the track and could have kept off, the motorman's negligence in failing to give the warning would be the proximate cause of the injury.

The requested instruction numbered nine was properly refused.   It assumes as an established fact that "all the evidence shows that the deceased drove upon the track of the defendant not far in advance of the defendant's car."

(6)     The tenth request to charge was properly refused.   Its essential proposition is that if the deceased was not vigilant and careful after getting upon the track the verdict must be for the defendant unless its motorman was wantonly reckless in the way he operated the car after he saw the deceased in a position of danger upon the track.   This does not correctly state the law.   If the jury should find that in such circumstances the motorman did not exercise ordinary reasonable care after he knew of the peril of the deceased, and that such care would have averted the accident, the plaintiff can recover even though the action of the motorman did not amount to wanton recklessness.

The requested instruction numbered sixteen was properly refused.   So far as the meaning of this request is clear it had already been covered in the general charge of the court.

There was no error in the refusal of the request numbered eighteen.   If it is intended as an instruction to treat the case without prejudice, the justice had already fully instructed the jury upon that point.   Also the jury were not in a position to apply that part of the request that reads,

"and you should not find a verdict against the defendant unless you would have found a verdict against the motorman, if the case had been brought against him." For the jury had received no instruction as to the law governing the motorman's legal liability under the circumstances of the case and such instructions would not have been pertinent to the case on trial.

The justice presiding also refused certain requested instructions in regard to damages. We find no error in such refusal.

The defendant excepted to the decision of the justice presiding denying the defendant's motion for a new trial. The determination of the justice upon that matter should be given great weight. We have examined the transcript and fully agree with the justice that the verdict of the jury as to the liability of the defendant was warranted by the testimony. The defendant has urged very strongly to the court that the amount of damages awarded by the jury was excessive. The plaintiff contends that in this action given by the statute for the recovery of damages for death by wrongful act the measure of damages is the estimated net income of the decedent during the period of his expectancy of life less the personal expenses of the decedent during the same period; that in estimating his net income no distinction is to be made between income arising solely from the investment of capital, and income the result of his physical and mental exertion including such part of the income arising from invested capital as was due to his skillful employment of that capital. That is not the rule in this state. There can be no recovery for loss of future income of invested capital when such income is disconnected with the exertions of the deceased, nor for any income from invested capital beyond that portion of said income which can be found to be the result of such exertions. In *McCabe* v. *Narragansett Electric Lighting Co.,* 27 R. I. 272, the court said: "In case of death, the action should be considered as though it were brought in behalf of the estate of the decedent

for the damage to that estate caused by the death in question."

(8)    The justice presiding at the trial did not charge the jury in accordance with this claim of the plaintiff, but very fully and correctly instructed the jury.   A portion of his instruction in regard to damages is as follows:

"You are instructed that in this case you cannot award any exemplary or punitive damages or any damages by way of solace for wounded feelings on the part of the daughters of the deceased or for the bereavement suffered by them or for the pain and suffering of the deceased or for the loss of his society by them, but that the measure of damages, if you find a verdict for the plaintiffs, is simply the pecuniary or money loss to his estate sustained in consequence of his death, which pecuniary loss and the amount thereof must be found by you from facts in evidence in the case and not by guess work.

"You are instructed that the pecuniary loss by reason of the death of the deceased is the present value of the net remainder left after deducting his personal expenses from the estimated income which he would probably have earned by his own exertions during the time that he would probably have lived if it had not been for the accident involved in this case, including in such exertions not only physical labor, but also mental exertions in the management and control of the business carried on by him.   Such income would not be his entire income, but to compute it there must be deducted from his entire income a fair amount for interest upon his capital invested by him in such business, consisting of the land, buildings, money and personal property used by him in such business, being such amount as such capital would naturally be expected to yield apart from his personal exertions, and in estimating this the fair rental value of his property for farming purposes should be taken into consideration.

"You are further instructed that in ascertaining the amount to be deducted for his personal expenses, you should

estimate what the deceased would have to lay out for the rest of his probable life to support himself according to his station in life, his means and personal habits, counting in not only his purely personal expenses, as for medical attendance, clothing, tobacco, and the like, but also his fair share at least of the general expense of maintaining the home where he lived in the style in which he was accustomed to maintain it, including in such general expense, food, fuel, wages of domestic servants and the like, and also including a reasonable amount for what he would probably have had to pay as rent for such a house as the one he lived in, if he had not owned it.    After deducting the amount so ascertained you should reduce the net remainder to its present value.

"You are instructed that in estimating the probable duration of the deceased's life, the time that he would probably have lived except for the accident involved in this case, and in estimating his probable future earning capacity, you should take into consideration the condition of his health at the time of the accident, his lameness, his rheumatism, the injuries he had previously received, his heart trouble, if any, and the hardening of his arteries, and also the possibility or probability that at his age, even if he lived for some years, he might soon become not a producer of new wealth by his physical and mental exertions, but a consumer of more wealth than he would produce by his own efforts, being thus a financial detriment to his estate rather than a benefit, considering him simply as a producer of wealth, as you must consider him for the purpose of assessing damages in this case."

The amount of damages awarded is somewhat large, but from a consideration of the testimony, we cannot say that they were so excessive as to be unwarranted or to indicate that the jury did not observe the very careful instructions of Mr. Justice Brown.

All the exceptions of the defendant are overruled and the case is remitted to the Superior Court with direction to enter judgment upon the verdict.

Mr. Justice Blodgett dissents.

*Harvey A. Baker, Waterman, Curran & Hunt,* for plaintiff.

*Gardner, Pirce & Thornley,* for defendant.

*William W. Moss, Charles R. Haslam,* of counsel.